UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
-------------------------------------------------------------------
FABIAN EVARISTO FERNANDEZ              :

                         :

                Plaintiff,     :

                         :       **COMPLAINT**

   -against-                     :

                         :

801 SMA MASTER ASSOCIATION, INC,     :
AMCO PRH 801 SOUTH MIAMI AVENUE LLC, :
BRICKELL HEIGHTS MASTER ASSOCIATION :
INC.,   9 SMA LLC,                     :

                         :

                         :

                Defendants.    :
-------------------------------------------------------------------

Plaintiff Fabian Burgos, by and through his undersigned counsel, EISENBERG & BAUM, LLP, hereby alleges as follows:

## THE PARTIES

5.       Plaintiff Fabian E. Fernandez ("Fabian Burgos" or "Plaintiff" hereinafter) is a professional artist residing in Argentina. Plaintiff is the "author of a work of visual art" within the meaning of 17 U.S.C. §106A.

6.       Defendants 801 SMA MASTER ASSOCIATION, INC (SLS LUX Association) and AMCO PRH 801 SOUTH MIAMI AVENUE LLC (SLS LUX Developer) (collectively "SLS LUX Defendants" hereinafter) and BRICKELL HEIGHTS MASTER ASSOCIATION, INC. (Brickell Heights Master Association) and 9 SMA LLC (Brickell Heights Developer) (collectively "Brickell Heights Defendants" hereinafter).

## JURISDICTION AND VENUE

7.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that this civil rights action arises under federal law.

8.      This court has *in personam* jurisdiction over Defendants because they own real property and conduct operations within, transact business in, and provide services within the City of Miami.

9.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because the events that give rise to the claim occurred in this district.

## FACTUAL BACKGROUND

10.     Plaintiff Fabian Burgos is an artist from Argentina who has gained prominence world-wide throughout his storied career.

11.     SLS Lux is a luxury hotel located in Brickell, the downtown Miami neighborhood. Defendant 801 SMA MASTER ASSOCIATION, INC (SLS LUX Association) is the Association of the building and Defendant AMCO PRH 801 SOUTH MIAMI AVENUE LLC (SLS LUX Developer) is the developer of the building with whom Plaintiff entered into a commission contract. (collectively "SLS LUX Defendants" hereinafter).

12.     Defendant Brickell Heights is a two-tower condominium also located in Brickell. Defendant BRICKELL HEIGHTS MASTER ASSOCIATION, INC. (Brickell Heights Association) is the condominium association and 9 SMA LLC (Brickell Heights Developer) is the developer of the building (collectively "Brickell Heights Defendants" hereinafter).

13.     Upon information and belief, Defendants owned, managed, and/or operated the properties SLS Lux and Brickell Heights during relevant times pertinent to this complaint.

14.     Plaintiff Fabian Burgos received foundational training at the workshops of Luis Felipe Noé and Ahuva Szlimowicz, and participated in prestigious scholarship programs like the Fundacion Antorchas.[1]

---

[1] Fabian Burgos, MUSEO MODERNO, at https://mapadelarte.museomoderno.org/en/artistas/burgos-fabian/

15.     Fabian Burgos has notable works in prestigious museums and galleries in Argentina, France, New York, and Miami. His works are found in the Museum of Modern Art of Buenos Aires, MALBA Museum of Latin American Art of Buenos Aires, MACBA Museum of Contemporary Art of Buenos Aires, Museo Castagnino + MACRO and The SPACE Collection, California, among other public and private collections. His solo exhibitions were presented in numerous prominent galleries including the Annina Nosei Gallery, New York and Alejandra Von Hartz Gallery, Miami.[2]

16.     Fabian Burgos is known for his pioneering art style "neocinetismo óptico." This style utilizes "precise arrangements of hues and values to generate an illusion of movement, depth, and spatial complexity within a two-dimensional plane" employing "geometric patterns – often circles, squares, and lines – as the building blocks of these optical illusions."[3]

17.     Fabian Burgos' original art style is well depicted in the public art mural, the Velocity Series, which has been commissioned in a monumental space in Buenos Aires. Below is an article celebrating the artwork which finds home in one of the most visible street of the city of Buenos Aires.

---

[2] Fabian Burgos, MUSEO MODERNO, at https://mapadelarte.museomoderno.org/en/artistas/burgos-fabian/

[3] Fabian Burgos, ARTSDOT, https://artsdot.com/en/artists/fabian-burgos/



***Photo: Velocity mural in 9 de Julio Avenue of Buenos Aires City, by Arte Publico[4]***

18.     Defendants SLS Lux and Brickell Heights commissioned Plaintiff to create the Velocity Series in April 2015, to be integrated in their building as a statement art piece for their buildings. Since the development phase, the developers of SLS Lux and Brickell Heights included the artwork of Fabian Burgos, a mega-sized public facing murals, as a core part of the property's design and value.

19.     The Developer Defendants each entered into contracts ("Commission Contracts" hereinafter) with Plaintiff to create the Velocity Series in SLS Lux and Brickell Heights.

20.     Plaintiff Fabian Burgos embarked on the Velocity Series in 2016 and completed the same in 2017 over 13 months of work. These iconic murals were gigantic in scale, with the approximate sizes as follows: SLS Lux: 32,000 sq ft; Brickell Heights (Front): 27,000 sq ft; Brickell Heights (Rear): 8,250 sq ft.

---

[4] Velocidad, ARTE PUBLICO, at https://www.artepublico.ar/velocidad/



**Source: WALLPAPER[5] (Brickell Heights)**

---

[5] Brickell Heights New Residential Towers In Miami, WALLPAPER,
https://www.wallpaper.com/architecture/brickell-heights-new-residential-towers-in-miami

21.     In an interview with the FORBES, the developer of Defendant Brickell Heights conceptualized the Plaintiff's artwork as a seminal piece, stating, "[w]hen a piece goes into an apartment building, it becomes an asset to the condo association – and can become a key factor in making a buyer fall in love with a property. . . the building also includes works by Matias Duville and an exterior art mural installation by Fabian Burgos."[6]



**Source: Website of Brickell Heights, https://mybrickellheights.com**

22.     On SLS Lux's prospectus and brochure, Defendant SLS Lux boasts artist collaborations with artists including Plaintiff Fabian Burgos, alongside other world-renowned artists including Fernando Botero and Ana Isabel Martinez.[7]

---

[6] Sorvino, *The Billionaire-Backed Related Group's Art Buying Spree, and the Works Being Unveiled at Art Basel Miami*, FORBES (Dec. 2014), at https://www.forbes.com/sites/chloesorvino/2014/12/04/the-billionaire-backed-related-groups-art-buying-spree-and-the-works-being-unveiled-at-art-basel-miami-2014/

[7] Brochure, SLS LUX BRICKELL, at https://slsbrickellavenue.com/pdf/SLS_LUX_BROCHURE.pdf



**Source: Brochure, SLS LUX BRICKELL**

23.     The Velocity Series quickly became an iconic artwork in South Miami.

24.     Museum experts and art collectors alike have revered the Velocity Series as a compelling artwork that denotes the relationship of the artworks with its environment.

25.     The Museum of Modern Art of Buenos Aires ("Museo Moderno") notes the Velocity Series as part of its description of Fabian Burgos: "In 2017, he [Fabian Burgos] created three murals of immense proportions, painted on the facades of the Brickell Heights and Brickell Lux buildings in Miami."[8]

26.     According to a Miami art magazine Les Couleurs, sophisticated art collectors have sought out the notable Velocity Series. In response to an interview question, "If you could live

---

[8] Fabian Burgos, MUSEO MODERNO, at https://mapadelarte.museomoderno.org/en/artistas/burgos-fabian/

with just one work of art, what would it be?" an acclaimed art collector responded: "Velocity by Fabian Burgos, one of the first pieces that I acquired and is part of the layout here in Downtown Miami. You may recognize the series as the exterior of Brickell Heights and the SLS Lux buildings."[9]

27.     Velocity Series is also well documented on social media by travelers and tourists of Miami. SLS LUX's own Instagram touts the Velocity Series as: "Our iconic rainbow wall stands tall in the heart of Brickell, a beacon of culture and luxury."[10]

28.     In 2023, Defendants filed a lawsuit against the SLS Lux and Brickell Heights' developer, contractor, construction manager, architect of record, structural engineer, electrical and plumbing engineer, waterproofing subcontractor, pool contractors, wall and plumbing contractors, roofing contractor, stucco subcontractors, and various other construction contractors and subcontractors of the building, for latent defects to the building.

29.     Importantly, Defendant's lawsuit pointed to defects which caused cracks in the stucco, water stain marks and efflorescence across the entirety of Fabian Burgos' Murals. [11]

30.     According to Defendant, "This mural is one of a kind and specific to the SLS Lux property, the stucco cracks that have been caused by the defective work of the Defendants is not only damaging the structure of the property by allowing moisture to penetrate the building, but it

---

[9] Copeland, A Glimpse Inside a Private Collection of a True Art Lover, LES COULEURS, at https://www.lescouleursmiamibeach.com/collectors/pablo-annovelli

[10] SLSLUXBRICKELL, INSTAGRAM POST, https://www.instagram.com/p/C7UGqB3uahe/?utm_source=ig_web_button_share_sheet

[11] *801 SMA Master Ass'n, Inc. v. AMCO PRH 801 S. Miami Ave., LLC*, No. 2023-001071-CA-01 (Fla. 11th Jud. Cir. Ct. Jan. 20, 2023) (complaint).

has also caused damage to this one of a kind mural that was specifically created for the SLS Lux Property."[12]

31.     The recommendation of the property condition assessment report included, "remove all loose stucco and apply new stucco . . . paint complete wall segment where deficiency was found while maintaining the design intent of the façade – mural." [13]

32.     Once Plaintiff discovered that his murals had been damaged, he communicated in good faith with Defendants' counsel, who advised that Defendants were engaged in litigation with the developer concerning several matters, including maintenance of the murals.

33.     In December 2023, Plaintiff placed Defendants on notice of the required repair work by submitting two detailed restoration proposals.

34.     Plaintiff alleges that, from December 2023 onward, Defendants represented that, upon resolution of the ongoing litigation with construction companies and insurers, Plaintiff would be retained to restore the murals. In communications with Plaintiff's art representative, Defendants' General Manager stated that the delay in repairs was due to the unresolved litigation and assured that repairs would proceed once a settlement was reached.

35.     In February 2025, Plaintiff's art representative spoke with the property manager of Brickell Heights, who requested a copy of the mural repair proposal. Plaintiff promptly provided the requested proposal.

36.     Plaintiff alleges that, in February 2025, Plaintiff's art representative communicated with the Senior Project Manager of the engineering and architecture firm representing Defendants. The Sr. Project Manager requested details regarding the restoration proposal, stating that

---

[12] *801 SMA Master Ass'n, Inc. v. AMCO PRH 801 S. Miami Ave., LLC*, No. 2023-001071-CA-01 (Fla. 11th Jud. Cir. Ct. Jan. 20, 2023) (complaint 92-99).

[13] *801 SMA Master Ass'n, Inc. v. AMCO PRH 801 S. Miami Ave., LLC*, No. 2023-001071-CA-01 (Fla. 11th Jud. Cir. Ct. Jan. 20, 2023) (complaint at 92)

Defendants "wanted to move forward" with the repairs, and asked for an invoice reflecting a 30% initial deposit. The Sr. Project Manager continued to request information to Plaintiff through May 2025 which Plaintiff's representative responded to. Since then, the Sr. Project Manager ceased responding to further inquiries and follow-ups.

37.     Upon information, Defendants and the construction companies reached a settlement on or about April 2025.

38.     Plaintiff thereafter provided updated restoration proposals to Defendants and stated that the work should begin immediately.

39.     Plaintiffs allege that, despite finalizing the settlement and securing resources for repair, Defendants failed to undertake or authorize restoration of the murals.

40.     Plaintiff alleges that Defendants intentionally and knowingly allowed the murals to remain in a damaged condition while collecting funds from third parties designated for repairs. To date, Defendants have neither repaired the murals nor provided Plaintiff with notice, options for removal, or authorization to proceed with restoration. As a result, Plaintiff has suffered harm, including violations of the Visual Artists' Rights Act, damage to the integrity of the artwork, reputational harm, and breach of contract.

41.     At all relevant times, the murals have remained in a state of ongoing deterioration, including cracking, structural damage, and lack of maintenance.

42.     At all relevant times, Defendants had knowledge of the murals' damaged condition.

43.     Upon information, portions of the murals have begun to detach and fall toward the street, including areas directly above the reception entrance of the SLS LUX Hotel. In response, Defendants installed a vertical black polyethylene covering over the murals, extending from top to bottom, which obscures and effectively bisects the artwork. This installation was undertaken without Plaintiff's knowledge or consent.

44.     This prolonged and unauthorized conduct has materially altered and mutilated the artwork and constitutes gross negligence under the Visual Artists' Rights Act, as Defendants failed to maintain and protect the murals, resulting in substantial and preventable harm to Plaintiff's reputation and the cultural value of the work.

45.     At the time Plaintiff created the murals, it was understood that they would be permanently affixed to the walls and endure indefinitely, as they were marketed as signature installations intended to enhance the value of the property for residents and owners.

46.     Mr. Burgos has not signed any VARA waivers to date.

47.     VARA waivers may be recognized under 17 U.S.C. §106A (e)(1) *only* "if the author expressly agrees to such waiver in a written instrument signed by the author. Such instrument shall specifically identify the work, and uses of that work, to which the waiver applies, and the waiver shall apply only to the work and uses so identified."

48.     As a result of the Defendants' actions, Plaintiff suffered damages for the loss of his murals. He has also suffered loss to his artistic reputation.[14]

49.     This prolonged and unauthorized action also breaches the contract between Defendants and Plaintiff. The Commission Contracts specify that the condominium association shall assume all obligations with respect to the Plaintiffs' works including maintenance or repair of the works.[15]

50.     The Commission Contracts also explicitly state that the Plaintiff retain all rights under the Copyright Act (17 U.S.C. 101 et seq.).

### FIRST CAUSE OF ACTION
**Violation of 17 U.S.C. 106A et seq. (Visual Artists Rights Act) against all Defendants**

---

[14] *Murals Condition*, YouTube (uploaded by Pablo Bogdan, November 24, 2025), https://www.youtube.com/shorts/J2Ogqe8tiVQ.

[15] Agreement between AMCO PRH 801 S. Miami Ave., LLC, and Fabian Burgos dated April 3, 2015, § 8.2; Agreement between 9 SMA LLC, and Fabian Burgos, dated April 3, 2015, § 8.2.

51. Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

52. The artworks described are works of visual art within the meaning of 17 U.S.C. §101 and constitute copyrightable subject matter.

53. The artworks Velocity Series has gained recognized stature.

54. Plaintiff herein created and maintained all ownership and copyright interests in works of visual art subject to the protection of VARA and installed those works on Defendants' building with Defendants' permission.

55. Without providing Plaintiff with a reasonable opportunity to protect and preserve their artworks, Defendants destroyed, mutilated, modified and defaced the works of art installed by Plaintiff, including each work of art listed by name herein and other works of art not specifically identified or described herein.

56. Defendants did not provide Plaintiff with notice in writing regarding their intent to destroy the artwork nor did they afford Plaintiff, pursuant to 17 U.S.C. §113, a period of 90 days after receiving such notice either to remove the work or to pay for its removal.

57. Plaintiff's works of art are of recognized stature and requisite professional standing within the meaning of VARA and are therefore entitled to the statute's protection. Plaintiff's works were in high demand in the public marketplace, they attracted legions of admirers who visited them in situ, and the Plaintiff has high name recognition among the artistic community. The works are recognized by experts in the art field, by the artistic community and by the general public.

58. Plaintiff has not executed a written agreement that specifies that the installation of any of the works of visual art at issue herein may subject those works to destruction, distortion,

mutilation nor other modification.

59.    A waiver was never signed by Plaintiff and did not conform with the requirements under 17 U.S.C. §106A(e)(1).

60.    Plaintiff incurred financial losses as a result of the wanton destruction of the valuable works of art.

61.    The destruction, distortion, mutilation, and/or modification of the work occurred in a manner prejudicial to Plaintiff's honor and/or reputation, causing him substantial harm in this regard.

62.    Defendants' actions were with knowledge, intentional, willful, wanton and malicious.

63.    Plaintiffs seek declaratory, injunctive, and equitable relief, monetary damages (actual and/or statutory), punitive damages, interests, costs, and attorneys' fees to redress Defendants' unlawful destruction of their works of art in violation of VARA, and all other forms of relief available under the law.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT against All Defendants

64.    Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

65.    At all times material hereto, valid and enforceable contracts existed between Plaintiff and Defendants (hereinafter "Commission Contracts"), both entered into on or about April 3, 2015.

66.    The Commission Contracts constituted a valid contract supported by sufficient consideration, whereby Plaintiff agreed to paint the murals (the "Work"), and Defendant agreed to reasonably maintain said Work.

13

67. Under Section 8.2 of the Commission Contract between Plaintiff and AMCO PRH 801, South Miami Avenue (SLS Lux), Defendant was required to undertake reasonable maintenance of the mural. The Commission Contract states, "The Artist representations of warranty are strictly conditioned upon the Client's reasonable maintenance of the Work. To that effect, the Client agrees and obligates itself to perform cleaning, refurbishing, servicing as maybe reasonably required to maintain the Work in its original condition, reasonable wear and tear excluded."

68. Under Section 8.2 of the Commission Contract between Plaintiff and 9 SMA LLC (Brickell Heights), Defendant was required to undertake reasonable maintenance of the mural. The Commission Contract states, "The Artist representations of warranty are strictly conditioned upon the Client's reasonable maintenance of the Work. To that effect, the Client agrees and obligates itself to perform cleaning, refurbishing, servicing as maybe reasonably required to maintain the Work in its original condition, reasonable wear and tear excluded."

69. The Commission Contract also specifies, "upon transfer of the subject product/artwork to the corresponding condominium association, the condominium association shall assume all obligations with respect to the Work including maintenance, and disclosure of the Work's originator to the same extent as the client herein." (Art. 11, both Commission Contracts)

70. Plaintiff fully performed all conditions, covenants, and obligations required of it under the Commission Contracts.

71. Since 2023 or prior, Defendants materially breached the Commission Contracts by failing to maintain the Work, despite Plaintiff's proposals to repair and maintain the Work.

72. Plaintiff provided Defendants with notice of the breach and a demand for performance in September of 2023 and again in 2025. Defendants chose not to act in any way that conforms with their duty under the contract.

73. As a direct and proximate result of Defendant's breach, Plaintiff has suffered foreseeable loss and damages including, but not limited to, lost compensation, lost profits, reputational damages, and has been required to retain professional services to represent Plaintiff's interests such as the undersigned.

74. Defendants, through the acts or omissions of their agents, representatives, and/or employees, did not pay for Plaintiff's damages and losses.

75. Plaintiffs seek declaratory, injunctive and equitable relief, monetary damages, treble damages, interests, and costs to redress Defendants' breach of contract, and all other forms of relief available under the law.

**THIRD CAUSE OF ACTION**
**PROMISSORY ESTOPPEL against All Defendants**

76. Plaintiff repeats and reiterates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

77. As an alternative to the SECOND CAUSE OF ACTION for breach of contract above, Plaintiff brings this promissory estoppel claim against all defendants.

78. As alleged in the facts, in December 2023 to date, Defendants' general manager represented to Plaintiff's representative that once a settlement was reached with third party construction companies and insurance companies, the Defendants would repair the mural.

79. In reasonable reliance of the Defendants' representations, Plaintiff waited for Defendants to settle their claims against the third party construction companies and insurance companies.

80. Defendants reasonably expected their representation to induce reliance in the form of forbearance on the part of Plaintiff. Indeed Plaintiff waited for Defendants to settle with third parties before bringing another proposal for repair to the Defendants in 2025.

81. Defendants failed to engage in conversations nor perform the repairs to the mural.

82. As a result of Defendants' false representations and acts and omissions to the contrary, Plaintiffs suffered damages including, but not limited to, lost compensation, lost profits, reputational damages, and has been required to retain professional services to represent Plaintiff's interests such as the undersigned.

83. Plaintiffs seek declaratory, injunctive and equitable relief, monetary damages, treble damages, interests, and costs, and all other forms of relief available under the law.

## JURY DEMAND

84. Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award as alleged in the above-stated claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures are in violation of VARA;

B) Award such actual damages as will compensate Plaintiff fully for financial losses and for the damage to his honor and reputation and for his humiliation, mental anguish, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, shock, emotional distress, inconvenience, emotion pain and suffering and any other physical and mental injuries Plaintiff suffered due to Defendants improper conduct pursuant to VARA and the common law;

C) Enter Injunctive Relief ordering repair of the murals at the Defendants' expense to be done by Plaintiff to preserve the integrity of the artworks;

D) Award statutory damages to Plaintiff pursuant to VARA;

E)  Award compensatory and punitive damages to the plaintiffs pursuant to the common law;

F)  Award reasonable costs and attorneys' fees pursuant to VARA;

G)  Enter a judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that

   Defendants' practices, policies and procedures constitutes a breach of contract;

H)  Grant such further relief as the Court may deem just and proper.

Dated:      April 8, 2026          Respectfully Submitted,

By:/s/ Adriana Alcalde
Adriana Alcalde, Esq.
Juyoun Han, Esq. (Pro Hac Vice to be submitted)
Eric Baum, Esq. (Pro Hac Vice to be submitted)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
(212) 353-8700
*Attorneys for Plaintiff*
*jhan@eandblaw.com*

17